UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) |
| Plaintiff, | ) |
| vs. | ) Cause No. 1:10-cv-438-WTL-TAB |
| IRC AUDIO, INC., et al., | ) |
| Defendants. | ) |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

Before the Court is the Plaintiff's Motion for Summary Judgment (Docket No. 27). This motion is fully briefed, and the Court, being duly advised, now **GRANTS** the Plaintiff's motion for the reasons set forth below.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not

required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.  BACKGROUND

On October 31, 2003, Defendant K2 Realty Group, LLC ("K2") became indebted to Plaintiff PNC Bank, National Association ("PNC") for $425,000 pursuant to a promissory note (hereinafter the "K2 Note").  PNC secured its interest in the K2 Note via a mortgage lien (hereinafter the "Construction Mortgage").  The Construction Mortgage gives PNC a first priority interest in real property located at 8035 Craig Street, Indianapolis, Indiana 46250 (the "Craig Street Property").  PNC recorded the Construction Mortgage with the Marion County Recorder on January 16, 2003.  As additional security of its interest in the K2 Note, PNC obtained an assignment of rents from K2.  This assignment, which also was filed in the Marion County Recorder's office on January 16, 2003, grants PNC the right to all leases and rents generated by the Craig Street Property.

The Craig Street Property is located in an office park that is managed by Defendant Castleton Park Association, Inc., a/k/a Castle Park Association ("Castleton Park").  Castleton Park has certain covenants and restrictions that deal with property management and tenant behavior.  These documents (hereinafter the "Covenants and Restrictions") were first filed in the Marion County Recorder's Office on December 16, 1991.  Pursuant to the Covenants and Restrictions, Castleton Park may assess property owners (including K2) a fee to cover administration and maintenance of common areas.  If an owner fails to pay an assessment, a late fee may be added and Castleton Park may file a lien against the property.  Pursuant to the Covenants and Restrictions, the "lien shall be subordinate only to the first mortgage, if any,

2

which was on the Parcel at the time the assessments became due and payable." Docket No. 31 Ex. 2 § 6.7.3.

After K2 failed to pay the Castleton Park assessment, on September 14, 2009, Castleton Park executed a Notice of Association Lien (the "Association Lien") on the Craig Street Property. Castleton Park recorded the Association Lien in the Marion County Recorder's Office on September 22, 2009.

On January 9, 2003, R. Kevin Meeks and Karen D. Meeks both delivered guaranties to PNC (hereinafter the "Meeks Guaranties"). Kevin and Karen agreed to be jointly and severally liable for K2's obligations to PNC. Also on January 9, 2003, Defendant IRC Audio, Inc. ("IRC") delivered its own guaranty (hereinafter the "IRC Guaranty"), which makes IRC jointly and severally liable for K2's indebtedness to PNC.

On November 20, 2003, the United States Small Business Administration ("SBA") recorded a mortgage on the Craig Street Property (the "SBA Mortgage").

In August 2004, IRC became indebted to PNC for $500,000 pursuant to a promissory note (hereinafter the "IRC Note"). PNC secured its interest in the IRC Note via a security agreement that gave PNC a first priority interest in all of IRC's then-owned or after-acquired assets.[1] PNC perfected its security interest by filing a UCC-1 financing statement with the Indiana Secretary of State.

On August 31, 2007, K2 issued a guaranty (hereinafter the "K2 Guaranty"), agreeing to be jointly and severally liable for IRC's indebtedness to PNC. On this same date, PNC obtained

---

[1] This includes a first priority interest in IRC's: (1) accounts; (2) accounts receivable; (3) inventory; (4) equipment; (5) general intangibles; (6) instruments; (7) chattel paper; and (8) contract rights. PNC also has a first priority interest in the proceeds and products of these items.

another mortgage on the Craig Street property. This second mortgage (the "2007 Mortgage") was filed in the Marion County Recorder's office on September 25, 2007.

On September 30, 2008, IRC, K2, and the Meeks entered into a forbearance agreement with PNC. The parties extended this forbearance agreement on November 13, 2008, and again on April 28, 2009. In the forbearance agreement and in both of the extensions, IRC, K2, and the Meeks acknowledged that their indebtedness to PNC was due and they were in default. IRC, K2, and the Meeks were given until January 15, 2010 to pay PNC. They failed to do so.

On March 12, 2010, PNC filed suit in Marion County Superior Court naming IRC, K2, the Meeks, Castleton Park, Premier Capital Corporation, and the SBA as Defendants. The SBA properly removed the case to this court. PNC has now filed for summary judgment seeking to foreclose its Construction Mortgage, 2007 Mortgage, assignment of rents, and security interest.[2]

### III. DISCUSSION

None of the parties have any objection to the Court's entry of summary judgment in PNC's favor. The parties agree that as the first mortgage on the Craig Street Property, PNC's 2003 Construction Mortgage enjoys first priority. The issue that has arisen is: who comes in second?

Castleton Park has filed a response asserting that its Association Lien is subordinate only to the Construction Lien. In other words, Castleton Park claims that its Association Lien

---

[2] Castleton Park responded to PNC's motion. However, as has become apparent, Castleton Park's "response" should really have been captioned a "response and cross-motion for summary judgment." Despite the technical mistake, the Court has construed the briefs as follows: Castleton Park's response (Docket No. 32) is treated as a cross-motion for summary judgment; the SBA's response (Docket No. 39) is treated as a response to Castleton Park's "motion"; and Castleton Park's second response (Docket No. 41) is treated as a reply.

receives second priority status. Not surprisingly, the SBA disagrees.

Castleton Park's argument is essentially that by virtue of its 1991 filing of the Covenants and Restrictions, "any party who might take an interest in the [Craig Street] Property after that date did so subject to the provisions of the Covenants and Restrictions, including Castleton Park's lien thereunder for any outstanding balance." Docket No. 32 at 5. Castleton Park claims that "all parties in this matter with an interest in this case – PNC Bank by virtue of its 2003 mortgage and 2007 mortgage, and the SBA by virtue of its 2003 mortgage – were on notice of Castleton Park's lien for any outstanding balance and the priority afforded to it by virtue of its 1991 recording and provisions therein." *Id*. Although Castleton Park acknowledges that its Association Lien did not actually attach until 2009, it asserts that the Association Lien "attains the priority of [the Covenants and Restrictions]." Docket No. 41 at 4. Castleton Park argues that the 2009 Association Lien is "wholly irrelevant" because the 2009 filing was "simply a notice to the world of the balance existing under the Covenants and Restrictions at that moment in time." *Id.*

Castleton Park has not cited any Indiana case law supporting its argument that the 2009 Association Lien gain the priority of the previously-filed Covenants and Restrictions. Castleton Park analogizes this situation to one involving a revolving line of credit and asserts that *Bank of America v. Ping*, 879 N.E.2d 665 (Ind. Ct. App. 2008), is informative. Having reviewed *Ping*, the Court disagrees.

Unfortunately, there is no Indiana case law that is directly informative on this issue. However, the Court believes that *F.N. Realty Services, Inc. v. Oregon Shores Recreational Club, Inc.*, 891 P.2d 671 (Or. Ct. App. 1995), is instructive. In *F.N. Realty*, the court concluded that a

residential community's covenants, restrictions, and agreements ("the CCRs") did not create a lien on every property in the community. The court noted that the CCRs authorized the homeowners association to impose an annual assessment on property owners. However, the CCRs "also expressly require[d] nonpayment of the assessment for 90 days before a lien [was] created. A lien did not existing on recording of the Declarations of Restrictions, because no power of assessment had been exercised and no delinquent assessment existed." *Id*. at 344. In short, "there could be no debt, and consequently no lien, until the association exercised its power to make an assessment." *Id*. (citing *Westwood Homeowners Ass'n, Inc. v. Lane County*, 864 P.2d 350, 355-56 (Or. 1993)).

So too in the instant case. Although the Covenants and Restrictions give Castleton Park the authority to file a lien against a property owner who fails to pay his or her assessments, the Covenants and Restrictions themselves are *not* a lien. No lien existed on the Craig Street Property until 2009. Thus, Castleton Park's priority is based on the 2009 attachment. This renders its lien junior to that of the SBA. Accordingly, Castleton Park's cross-motion for summary judgment is **DENIED**.

## CONCLUSION

For the foregoing reasons the Plaintiff's Motion for Summary Judgment (Docket No. 27) is **GRANTED**. Castleton Park's cross-motion for summary judgment is **DENIED**. A status conference for the purpose of delineating the terms of the judgment in this case is set for **10:00 a.m. on Wednesday, March 9, 2011 in Room 523**. In lieu of this conference, the parties may work together to draft a judgment, which they may then tender for the Court's approval.

SO ORDERED: 02/07/2011

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Deborah J. Caruso
Dale & Eke
dcaruso@daleeke.com

Phillip A. Garrett
Thorne Grodnik, LLP
pgarrett@tglaw.us

Bernie W. (Too) Keller
Keller Macaluso LLC
too@kellermacaluso.com

William Lance McCoskey
United States Attorney's Office
william.mccoskey@usdoj.gov

Meredith R. Thomas
Dale & Eke, P.C.
mthomas@daleeke.com

Carina M. de la Torre
Keller Macaluso LLC
carina@kellermacaluso.com